1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7  | AMERICAN SMALL BUSINESS    | Case No.  21-cv-02877-DMR
8  | LEAGUE,                    |
   |         Plaintiff,         | **ORDER ON CROSS-MOTIONS FOR
9  |                            | SUMMARY JUDGMENT**
   |     v.                     |
10 |                           | Re: Dkt. Nos. 15, 19
11 | UNITED STATES SMALL BUSINESS |
   | ADMINISTRATION,           |
12 |         Defendant.         |

13

14        Plaintiff American Small Business League ("ASBL") submitted three[1] requests for

15 information under the federal Freedom of Information Act ("FOIA") to Defendant United States

16 Small Business Administration ("SBA") and sought to waive or reduce fees related to search,

17 review, and duplication of responsive documents.  SBA denied ASBL's fee waiver or reduction

18 requests and charged fees to complete the FOIA production.  The parties now cross-move for

19 summary judgment on whether SBA's fees assessment was proper.  *See* Pl.'s Mot. for Summ. J.

20 ("ASBL Mot.") [Docket No. 15]; Def.'s Cross-Mot. for Summ. J. ("SBA Mot.") [Docket No. 19];

21 Pl.'s Opp'n & Reply ("ASBL Opp'n") [Docket No. 22]; Def.'s Reply ("SBA Reply") [Docket No.

22 26].  The court held a hearing on February 10, 2022.  Having reviewed the record and considered

23 the parties' arguments, each motion is granted in part and denied in part.

24        _____

25 [1] ASBL attempted to add two more FOIA requests to this case (described as FOIA Request Nos.
   566 and 1133), arguing that they are related to another request that is part of this motion.  For the
26 reasons stated during the February 10, 2022 hearing, the court ruled that they were not related and
   that ASBL must file a separate complaint if it wishes to pursue a fee waiver claim with respect to
27 those two requests.  *See* 2/10/2022 Min. Order [Docket No. 27]; 2/10/2022 H'g Tr. at 19-20
   ("Tr.") [Docket No. 29].
28

United States District Court
Northern District of California

## I.   BACKGROUND

The following facts are undisputed unless otherwise noted.  ASBL is an advocacy organization that seeks to promote and advocate for the interests and legal rights of small businesses, including women-, veteran-, and minority-owned small businesses.  Declaration of Lloyd Chapman ("Chapman Decl.") ¶ 3.  Chapman is the president and founder of ASBL and describes himself as a long-time advocate for small businesses.  *Id.* ¶¶ 1-2, 6.  ASBL uses FOIA requests and other tools to investigate whether programs meant to help small business are working as intended and evaluate the truth of public statements about these programs and their implementation against internal program data.  *Id.* ¶ 3.  ASBL then publicizes its findings through public statements and national news media appearances.  *Id.* ¶¶ 3, 6.  ASBL regularly makes FOIA requests and analyzes and publishes the information it obtains; it has successfully prosecuted many FOIA lawsuits.  *Id.* ¶¶ 3-4.

Defendant SBA is a federal agency established under the 1953 Small Business Act "with the declared policy that 'the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns.'"  *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 964 (N.D. Cal. 2020) (quoting 15 U.S.C. § 631(a)); *see* 15 U.S.C. § 633.  The SBA is responsible for administering the Paycheck Protection Program ("PPP"), enacted by the 2020 Coronavirus Aid, Relief, and Economic Security (CARES) Act.  *Lopez*, 505 F. Supp. 3d at 966.  The PPP "provide[d] fully guaranteed SBA loans for certain eligible small businesses, individuals and nonprofit organizations that c[ould] be forgiven if loan proceeds were used as required by the Act.  Eligible expenses include[d] payroll, rent, utility payments, and other limited uses."  Declaration of Karl Olson ("Olson Decl.") Ex. N at 6 (SBA Office of the Inspector General, *Inspection of SBA's Implementation of the Paycheck Protection Program—Report No. 21-07* (Jan. 14, 2021)).  Congress originally appropriated $349 billon to the program and subsequently appropriated an additional $310 billion.  *Id.*

A.  **FOIA Request No. 565**[2]

On April 9, 2020, ASBL through its counsel Karl Olson requested five categories of records related to the SBA's press office communications with external parties between June 1, 2019 and March 31, 2020.  Olson Decl. Ex. A at 2; Declaration of Eric S. Benderson ("Benderson Decl.") ¶ 4.[3]  Specifically, ASBL requested:

- All documents indicating the names and salaries of each current employee of the Small Business Administration's (SBA) Press Office.
- All documents indicating, concerning, or referring to all outbound calls made by every employee of the SBA's Press Office between June 1, 2019 and March 31, 2020.
- All records of communications (written, oral, and electronic) indicating, concerning, or referring to outbound calls made by every employee of the SBA's Press Office between June 1, 2019 and March 31, 2020.
- All documents indicating, concerning, or referring to any and all inbound and outbound calls for [Deputy Associate Administrator (Operations) for the Office of Communications Public Liaison] Terry Sutherland between June 1, 2019 and March 31, 2020.
- All records of communications (written, oral, and electronic) indicating, concerning, or referring to any and all inbound and outbound calls for Terry Sutherland between June 1, 2019 and March 31, 2020.

Olson Decl. Exs. A, B; Benderson Decl. ¶ 4.  ASBL sought a waiver or reduction of fees because it intended to use the information "for educational purposes," "because disclosure of the requested information is in the public interest," and because the information "contributes significantly to the public understanding of the operations and activities of the SBA, and primarily promotes [ASBL's] noncommercial interests."  Olson Decl. Ex. A.  SBA designated this FOIA request as Request No. 2020-SBA-00565.  Olson Decl. ¶ 2; Benderson Decl. ¶ 4 ("Request No. 565").  On April 23, Olson spoke with SBA Senior Legal Counsel David Fishman and clarified that the request included SBA press office correspondence containing particular search terms, including "COVID-19" and the "Paycheck Protection Program."  Olson Decl. ¶ 2; Benderson Decl. ¶ 5.  While ASBL does not elaborate on the subject of the phone call, uncontroverted record evidence indicates that in that call ASBL further requested that:

- Mr. Sutherland's email records be searched and produced for the time period set forth in

---

[2] The court denominates each request with the tracking number assigned to it by SBA.

[3] Page citations to the exhibits in Olson and Benderson Declarations are to the ECF-stamped pagination for each exhibit.

ASBL's FOIA requests.

- A word search for all SBA press office employees be done using the following search terms: "New York Times," "Washington Post," "Fox News," "USA Today," "Los Angeles Times," "San Francisco Chronicle," "CNN," "CBS News," "PBS Newshour," "MSNBC," and "big business."
- A search for all press office employees be conducted using the search terms: "Pandemic," "Coronavirus," "COVID- 19," "inspector general," "paycheck protection program," "glenn fine" and "President Trump."

Olson Decl. Ex. B; Benderson Decl. ¶ 5, Ex. B.

On May 7, 2020, SBA responded to Request No. 565 in writing.  Olson Decl. Ex. B; *see* Benderson Decl. ¶ 6.  After documenting the additional items that Olson requested in his call with Fishman, SBA rejected ASBL's request for a fee waiver based on a four-factor test articulated in the letter.  Olson Decl. Ex. B.  SBA estimated the initial costs of Request No. 565 at $12,584.  *Id.*

ASBL replied on May 12, 2020, describing SBA's estimate as "outrageous and astounding" and demanding that SBA reconsider its position on the fee waiver.  Olson Decl. Ex. C.  The parties dispute what happened next.  According to ASBL, SBA never responded to its letter requesting reconsideration.  ASBL Mot. at 8; *see* Olson Decl. ¶ 4.  SBA counters by proffering a letter from Sutherland dated June 4, 2020 in which he stated that while SBA "disagree[d] with [ABSL's] characterization of [its] FOIA request," it was "willing to waive fees for the search and review of" documents after January 1, 2020.  Benderson Decl. Ex. B at 2-3, Ex. K at 4-5; *see* Benderson Decl. ¶ 8 ("SBA agreed to waive fees for documents created from 2020 on, as the PPP was created and opened to the public in April 2020.").  SBA then responded to ASBL's first item requesting salary data for SBA press office employees at no cost.  Benderson Decl. ¶ 9.  Sutherland stated, however, that as to the remaining requests, ASBL "failed to sufficiently support how responsive documents would inform the public on how SBA is administering the PPP, [ASBL's] proffered justification for a fee waiver."  Benderson Decl. Ex. B at 2-3.  SBA accordingly denied ASBL's request for reconsideration of a fee waiver or reduction related to ASBL's second through sixth items in Request No. 565 and for pre-2020 documents responsive to its seventh item.  *Id.*  SBA provided a revised estimate of $9,832.  *Id.*

On July 15, 2020, ASBL administratively appealed the fee as it was originally assessed at $12,584.  Olson Decl. Ex. D.; Benderson Decl. ¶ 11.  SBA registered the appeal on July 22, 2020 under tracking number SBA-2020-002415.  Olson Decl. Ex. E.  On November 6, 2020, SBA

1    affirmed the initial agency determination denying a fee waiver for Request No. 565.[4]  Benderson

2    Decl. Ex. D ("No. 565 Appeal Ltr.").  On February 8, 2021, SBA produced documents responsive

3    to ASBL's request, narrowly tailored to items related to the PPP.  Benderson Decl. ¶ 13, Ex. E.

4    SBA asserts that ASBL owes $9,832 in outstanding charges for this request.  Benderson Decl.

5    ¶ 14.

6                **B.  FOIA Request No. 1532**

7          In April or May 2020, ASBL requested "all of the emails in SBA's possession regarding

8    the Regional Regulatory Fairness Board, and all emails in SBA's possession relating to,

9    mentioning, received by or authored by Jeffrey Koenig and Jerome Toliver (who are on Region 9

10   of the Regional Regulatory Fairness Board) and Dr. Alison K. Brown."[5]  Olson Decl. ¶ 7, Exs. F,

11   T; Benderson Decl. ¶ 15.  SBA designated this as Request No. SBA-2020-01532 ("Request No.

12   1532").  Benderson Decl. ¶ 15, Ex. I.

13         On June 12, 2020, SBA communicated the estimated charges of $2,852 to process the

14   request.  Olson Decl. Ex. G; Benderson Decl. ¶ 16.  On July 14, 2020, ASBL filed an

15   administrative appeal of the fees estimate and sought a fee waiver; SBA confirmed receipt the

16   following day.  Olson Decl. Exs. H; I; Benderson Decl. ¶ 17.  On November 4, 2020, SBA

17   affirmed its denial of a fee waiver.  Olson Decl. Ex. Q ("No. 1532 Appeal Ltr."); Benderson Decl.

18   ¶ 18.  ASBL paid the full fee on February 2, 2021.  Olson Decl. Ex. W; Benderson Decl. ¶ 19.  On

19   February 12, 2021, SBA produced a first batch of documents responsive to Request No. 1532.

20   Benderson Decl. Ex. M. at 2-3.  SBA followed up with a second batch on March 10, 2021, *id.* at 4-

21   5; a third on April 15, 2021, *id.* at 6-7; a fourth on May 14, 2021, *id.* at 8-9, and a fifth and final

22   batch on June 21, 2021, *id.* at 10-11.

23

24

25   _____

26   [4] ASBL disputes that it received this appeal determination.  ASBL Mot. at 8.

27   [5] The parties dispute the specific date of this request.  ASBL contends it was "[i]n or about April
     through June 2020."  ASBL Mot. at 8; Olson Decl. ¶ 7.  SBA dates it to May 22, 2020.  SBA Mot.
     at 7; Benderson Decl. ¶ 15. The evidence shows the request was made in multiple written
28   communications including on May 22 and June 1, 2020.  Olson Decl. Exs. F, T; Benderson Ex. I.

United States District Court
Northern District of California

C.  **FOIA Request No. 1953**

On June 19, 2020, ASBL requested several categories of records from SBA related to

individuals involved in advocacy and advising on small businesses and small business policy.

Olson Decl. Ex. J; Benderson Decl. ¶ 25.  That request sought:

- Emails and correspondence relating to Bertica Cabrera-Morris, member of the National Small Business Development Center (SBDC) Advisory Board and owner of BCM Consulting.
- Emails and correspondence relating to Lea Marquez Peterson, member of the National SBDC Advisory Board and owner of the Marquez Peterson Group.
- Emails and correspondence relating to Bruce Thompson, member of the National SBDC Advisory Board and President of Regional Centers Holding Group.
- Emails and correspondence relating to Elizabeth ("Liz") Sara, Chair of the National Women's Business Council.
- Emails and correspondence relating to Pamela Prince-Eason, President and CEO of the Women's Business Enterprise National Council.
- Emails and correspondence relating to Rebecca Hamilton, member of the National Women's Business Council.

*Id.*  SBA designated this as Request No. SBA-2020-01953.  Olson Decl. ¶ 11 ("Request No.

1953").  On June 30, 2020, SBA denied ASBL's request for a fee waiver.  Olson Decl. Ex. K;

Benderson Decl. ¶ 26.  The denial stated that "the records [ABSL is] seeking would have no

connection to SBA's implementation of the [PPP].  [ASBL's] request sets forth no specific time

frames nor does it seek records related to the PPP.  Instead it broadly seeks all emails at any time

whatsoever related to the board member."  Olson Decl. Ex. K at 3.  Accordingly, SBA estimated

fees at $2,264 to satisfy this request.  *Id.*; Benderson Decl. ¶ 26.

On July 14, 2020, ASBL filed an administrative appeal, which SBA confirmed the

following day and registered as Appeal No. SBA-2020-002298.  Olson Decl. Exs. L, M;

Benderson Decl. ¶ 27.  ASBL objected to SBA's decision as "the correspondences requested

would likely explain the SBA's motivation to provide an exception for large businesses under the

PPP."  Olson Decl. Ex. L at 4.  ASBL also repeated a number of the objections it made in its other

administrative appeals.  *See* id. at 3-4.  On November 5, 2020, SBA affirmed its fee determination.

Benderson Decl. Ex. J ("No. 1953 Appeal Ltr.").

D.  **Procedural History**

ASBL filed its initial complaint on October 13, 2020, alleging FOIA violations by SBA as

6

1   well as by a separate federal agency, the Office of Management and Budget ("OMB").  On April

2   21, 2021, the court severed the complaint after finding that the FOIA requests against SBA and

3   OMB were unrelated.  [Docket No. 1.]  The court ordered the clerk to open a case and assign it a

4   separate case number and ordered ASBL to file a complaint containing its claims against SBA

5   only.  *Id.*[6]  On April 28, 2021, ASBL filed the operative complaint, which alleges that SBA

6   improperly assessed fees in violation of FOIA's requirements on fee waivers and reductions and

7   seeks declaratory and injunctive relief.  [Docket No. 3.]

8   **II.     LEGAL STANDARD**

9           A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

10  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden

11  of establishing the absence of a genuine issue of material fact lies with the moving party.

12  *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477

13  U.S. 317, 323 (1986)).  The court must view the evidence in the light most favorable to the non-

14  moving party.  *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

15  2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A genuine factual issue

16  exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could

17  return a verdict for the nonmoving party.  *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200

18  F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248).  The

19  court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.

20  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*,

21  477 U.S. at 255).

22          To defeat summary judgment once the moving party has met its burden, the nonmoving

23  party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as

24  otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of

25  material fact exists.  *Devereaux*, 263 F.3d at 1076.  More than a "scintilla of evidence" must exist

26

27  ───────────────

28  [6] ASBL's allegations against OMB are now the subject of the first suit, *American Small Business League v. U.S. Office of Management and Budget*, No. 20-cv-7126-DMR.

United States District Court
Northern District of California

1  to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477

2  U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue"

3  will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting

4  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the

5  record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

6  is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at

7  587).

8      Where, as here, the parties have filed cross-motions for summary judgment, "each motion

9  must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside*

10  *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation omitted). "In fulfilling its duty to review

11  each cross-motion separately, the court must review the evidence submitted in support of each

12  cross-motion." *Id.* "Most FOIA cases are resolved by the district court on summary judgment,

13  with the district court entering judgment as a matter of law." *Animal Legal Def. Fund v. FDA*, 836

14  F.3d 987, 989 (9th Cir. 2016) (en banc). "[T]here is no principled distinction to be drawn between

15  [the Ninth Circuit's] usual summary judgment standard and the standard to be applied in FOIA

16  cases." *Id.*

## III.   DISCUSSION

18      ASBL seeks to waive or reduce the fees charged by SBA for processing Request Nos. 565,

19  1532, and 1953. SBA counters that it properly assessed these fees, and that ASBL has failed to

20  meet its burden to show it is entitled to fee waivers or reductions.

21      "FOIA was enacted 'to pierce the veil of administrative secrecy and to open agency action

22  to the light of public scrutiny.'" *A.C.L.U. of N. Cal. v. Dep't of Justice*, 880 F.3d 473, 482-83 (9th

23  Cir. 2018) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). FOIA is "broadly

24  conceived" and favors "full agency disclosure unless information is exempted under clearly

25  delineated statutory language." *Yagman v. Pompeo*, 868 F.3d 1075, 1078-79 (9th Cir. 2017)

26  (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). Agencies bear a duty to

27  "liberally construe" FOIA requests. *Id.* at 1080.

28      Agencies may charge fees for processing FOIA requests depending on how the requester

8

1    intends to use the records.  "FOIA delineates three types of costs—'search costs,' 'duplication

2    costs,' and 'review costs'—and places requesters into three categories that determine which of

3    these costs a given requester must pay."  *OSHA Data/CIH, Inc. v. Dep't of Labor*, 220 F.3d 153,

4    160 (3d Cir. 2000); *see* 5 U.S.C. § 552(a)(4)(A).  This first category, records for "commercial

5    use," are subject to all three types of costs.  5 U.S.C. § 552(a)(4)(A)(ii)(I) ("subclause (I)"); *OSHA*

6    *Data*, 220 F.3d at 160.  The second category, records requested by "an educational or

7    noncommercial scientific institution" for "scholarly or scientific research" or by "a representative

8    of the news media" and that are not intended for commercial use, are subject to duplication costs

9    only.  5 U.S.C. § 552(a)(4)(A)(ii)(II) ("subclause (II)"); *OSHA Data*, 220 F.3d at 160.  The third

10   category, records sought by all other requesters apart from educational or scientific institutions or

11   representatives of the news media and that are not intended for commercial use, are subject to

12   search and duplication costs.  5 U.S.C. § 552(a)(4)(A)(ii)(III) ("subclause (III)"); *OSHA Data*, 220

13   F.3d at 160.

14        FOIA processing charges may be further reduced below these rates or waived altogether if

15   "disclosure of the information is in the public interest."  5 U.S.C. § 552(a)(4)(A)(iii).  "Such

16   disclosure is in the public interest if 'it is likely to contribute significantly to public understanding

17   of the operations or activities of the government and is not primarily in the commercial interest of

18   the requester.'"  *Friends of the Coast Fork v. Dep't of Interior*, 110 F.3d 53, 54-55 (9th Cir. 1997)

19   (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  Both prongs of this test must be satisfied to warrant a

20   public interest fee waiver.  *See Bartko v. Dep't of Justice*, 898 F.3d 51, 75 (D.C. Cir. 2018).

21   "[F]ee waivers under Subsection (a)(4)(A)(iii) may be whole or partial."  *Eagle v. Dep't of*

22   *Commerce*, No. C0120591-JF, 2003 WL 21402534, at *3 n.3 (N.D. Cal. Apr. 28, 2003).

23        Certain fees may also be reduced if an agency is untimely in producing the requested

24   records.  Specifically, "an agency shall not assess any search fees (or in the case of a requester

25   described under [subclause (II)], duplication fees) under this subparagraph if the agency has failed

26   to comply with any time limit" set forth in 5 U.S.C. § 552(a)(6).  5 U.S.C. § 552(a)(4)(A)(viii).

27   Such time limits include appeals related to a records request.  *Id.* § 552(a)(6)(A)(ii).  However, the

28   agency may be excused for failing to comply with the time limits in the event of "unusual" or

United States District Court
Northern District of California

1    "exceptional circumstances."   5 U.S.C. § 552(a)(4)(A)(viii)(II).

2         FOIA authorizes agencies to promulgate regulations "specifying the schedule of fees

3    applicable to the processing of requests . . . and establishing procedures and guidelines for

4    determining when such fees should be waived or reduced."  5 U.S.C. § 552(a)(4)(A)(i).  SBA duly

5    issued regulations setting forth its FOIA fee schedules and procedures.  *See* 13 C.F.R. § 102.8.

6         The court reviews FOIA fee waiver decisions de novo and is "limited to the record before

7    the agency."  5 U.S.C. § 552(a)(4)(A)(vii); *Friends of the Coast Fork*, 110 F.3d at 55.  "Fee-

8    waiver applications are to be liberally construed in favor of requesters."  *Bartko*, 898 F.3d at 75;

9    *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987)

10   (quoting legislative history).  "[R]equesters bear the initial burden of satisfying the statutory and

11   regulatory standards for a fee waiver."  *Friends of the Coast Fork*, 110 F.3d at 55.  However, "the

12   government's denial letter must be reasonably calculated to put the requester on notice as to the

13   deficiencies in the requester's case."  *Id.*  "On judicial review, [the court] cannot consider new

14   reasons offered by the agency not raised in the denial letter."  *Id.*  In other words, "the agency

15   must stand on whatever reasons for denial it gave in the administrative proceeding.  If those

16   reasons are inadequate, and if the requesters meet their burden, then a full fee waiver is in order."

17   *Id.*

18        ASBL seeks to waive all fees for the three FOIA requests in accordance with the public

19   interest fee provision, 5 U.S.C. § 552(a)(4)(A)(iii), because the requested information served the

20   public interest and did not primarily serve its commercial interests.  Alternatively, it seeks to limit

21   the charges to duplication costs and exclude review and search fees under the second category of

22   fee reductions, *see* subclause (II), because it qualifies as a representative of the news media and it

23   did not make the requests for a commercial purpose.  Finally, ASBL contends that if it is not

24   entitled to a full fee waiver, SBA should not charge search fees under 5 U.S.C.

25   § 552(a)(4)(A)(viii) because the agency failed to timely process ASBL's administrative appeals of

26   the fee charges.

27        SBA counters that ASBL failed to meet its burden at the administrative level to show that

28   it qualifies for a public interest fee waiver because ASBL failed to establish that it intended to use

United States District Court
Northern District of California

10

1    the information to contribute significantly to public understanding of government activities or

2    operations.  Moreover, ASBL failed to show it is entitled to a fee reduction under subclause (II)

3    because ASBL is not a representative of the news media and did not request information for a non-

4    commercial purpose.  It also argues that unusual and exceptional circumstances related to COVID-

5    19 justified its delayed response to ASBL's administrative appeals.

6          The court evaluates ASBL's grounds for a fee waiver before analyzing the request for a fee

7    reduction.

8          **A.  Fee Waiver**

9          The first question is whether the information sought by ASBL in each of its three FOIA

10   requests is in the public interest because it is likely to contribute significantly to public

11   understanding of SBA's operations or activities.  *See* 5 U.S.C. § 552(a)(4)(A)(iii); 13 C.F.R. §

12   102.8(*l*)(1).  To satisfy its prima facie burden to show that a request qualifies for a public interest

13   fee waiver, ASBL must "explain with reasonable specificity how disclosure will contribute to

14   public understanding."  *McClellan*, 835 F.2d at 1285; *see also Bartko*, 898 F.3d at 75 (requester is

15   "entitled to a fee waiver if he shows in 'reasonably specific' and 'non-conclusory terms' that the

16   disclosed records would contribute to public understanding of the government's activities.").  "In

17   the Ninth Circuit, if a non-profit organization has 'identified why they wanted the administrative

18   record, what they intended to do with it, to whom they planned on distributing it, and the

19   [relevant] expertise of their membership,' then a waiver is appropriate."  *Ctr. for Biological*

20   *Diversity v. Office of Mgmt. & Budget*, 546 F. Supp. 2d 722, 727 (N.D. Cal. 2008) (quoting

21   *Friends of the Coast Fork*, 110 F.3d at 55) (alteration in original).

22          **1.     Request No. 565**

23          Request No. 565 seeks information about SBA's press office communications.  ASBL

24   sought a fee waiver by asserting in a conclusory manner that "disclosure of the requested

25   information is in the public interest" and that the "information contributes significantly to the

26   public understanding and activities of the SBA[.]"  Olson Decl. Ex. A.  SBA rejected the waiver

27   request, replying that "requesters must support the request in sufficient detail" and that ASBL

28   "failed to address the four factors" SBA required to show that a disclosure was in the public

1    interest.[7]  Olson Decl. Ex. B.

2         ASBL subsequently addressed the four factors in its May 12, 2020 request for

3    reconsideration.  Olson Decl. Ex. C.  First, ASBL asserted that its request "indisputably concerns

4    the 'operations or activities of the government'" because it sought the names and salaries of SBA

5

6    _____

     [7] SBA's FOIA fees regulation mandates that the agency waive or significantly reduce fees "based
7    on all available information" if the following factors are satisfied:

8         (i) Disclosure of the requested information would shed light on the operations
          or activities of the government. The subject of the request must concern
9         identifiable operations or activities of the Federal Government with a
          connection that is direct and clear, not remote or attenuated.
10
          (ii) Disclosure of the requested information is likely to contribute
11        significantly to public understanding of those operations or activities. This
          factor is satisfied when the following criteria are met:
12
               (A) Disclosure of the requested records must be meaningfully
13             informative about government operations or activities. The disclosure
               of information that already is in the public domain, in either the same
14             or a substantially identical form, would not be meaningfully
               informative if nothing new would be added to the public's
15             understanding.

16             (B) The disclosure must contribute to the understanding of a
               reasonably broad audience of persons interested in the subject, as
17             opposed to the individual understanding of the requester. A
               requester's expertise in the subject area as well as the requester's
18             ability and intention to effectively convey information to the public
               must be considered. Components shall presume that a representative
19             of the news media will satisfy this consideration.

20        (iii) The disclosure must not be primarily in the commercial interest of the
          requester. . . .
21
     13 C.F.R. § 102.8(*l*)(2) (omitting factors for showing non-commercial interest).  While SBA's
22   letter did not explicitly quote from or cite this rule, the four factors enumerated in SBA's response
     generally encompass these provisions.  ASBL failed to address this regulation but argues that the
23   court should not defer to an agency's interpretation of FOIA.  *See* ABSL Opp'n at 11 n.7.  The
     court does not reach this argument as its ruling relies on the statutory language of FOIA, but it
24   notes that federal courts including the Ninth Circuit have previously contemplated agency
     regulations on FOIA fee waivers.  *See, e.g.*, *Friends of the Coast Fork*, 110 F.3d at 55 (noting
25   Department of Interior's "multi-factor balancing test to assist it in evaluating the statutory
     standard" for a public interest waiver and concluding that plaintiffs "passed the test"); *McClellan*,
26   835 F.2d at 1286 (considering similar Department of Defense regulations); *Ctr. for Medicare
     Advocacy v. Dep't of Health & Human Servs.*, 577 F. Supp. 2d 221, 240 (D.D.C. 2008)
27   (considering the Department of Health and Human Services's standard).

28

staff members.  *Id.* at 2-3.  Second, its requests were "focused on the PPP and how the SBA has administered that controversial program," and "[t]he public has an overwhelming interest in knowing whether SBA has administered the PPP effectively."  *Id.* at 3.  Third, the request would "manifestly contribute to the 'understanding of the public at large'" because ASBL is a "subject matter expert on the issue of whether small businesses receive an adequate share of federal contracting dollars" and uses the media to publicize information.  *Id.*  For example, Chapman had previously appeared on network television, and Olson recently had published two opinion pieces in the *San Francisco Chronicle* that "deal with the importance of obtaining information about small business subcontracting and about the administration of the [PPP]."  *Id.*  Fourth, "disclosure of the records ASBL seeks will contribute significantly to public understanding of government operations or activities, especially in light of the fact that SBA is now entrusted with administering and overseeing the staggering $660 billion allocated to the PPP under the CARES Act."  *Id.*[8]

ASBL reiterated many of these arguments in its administrative appeal.  It asserted that it is a "public advocacy group," and that it intended to use information from this request "to inform the public about the nature and basis for the SBA's press office's public statements about the PPP, and about other small business-related programs administered by the SBA both before and during the PPP, and to keep the SBA accountable in crafting and implementing them."  Olson Decl. Ex. D at 3, 5.  Furthermore, the information would "shed light on how the SBA's press office interacted with the public, and will allow the public to learn about not only what the SBA's press office said publicly about its small business programs, but also the extent to which outside individuals and

---

[8] ASBL's letters also referenced two attorneys' fees settlements in FOIA-related dispute against the Department of Defense for the purpose of showing that the "[agency] would not have written these checks if it thought it had a colorable argument that ASBL wasn't entitled to fees."  Olson Decl. Ex. C; *see Am. Small Bus. League v. Dep't of Defense*, No. 18-cv-01979-WHA (N.D. Cal. Aug. 12, 2020) (ECF No. 183); *Am. Small Bus. League v. Dep't of Defense*, No. 14-cv-02166-WHA (N.D. Cal. Aug. 6, 2018) (ECF No. 177).  ASBL further pointed to an attorneys' fees award in another FOIA lawsuit it brought against the SBA in which that court "ruled that ASBL was entitled to recover fees because its work was in the public interest."  Olson Decl. Exs. C, D; *see Am. Small Bus. League v. SBA*, No. C08-00829-MHP, 2009 WL 1011632, at *5 (N.D. Cal. Apr. 15, 2009).  SBA refused to consider this previous litigation "because the analysis is based on the nature of the request itself and must be evaluated on a case by case basis."  No. 565 Appeal Ltr. at 7.  As ASBL does not rely on these citations in its briefing, the court declines to consider them.

United States District Court
Northern District of California

entities influenced the SBA's press office's public positions, and the extent to which the SBA's press office believed its efforts during the specified time period were tailored to achieving the SBA's stated purpose of helping small businesses." *Id.* at 4.  The information would also "shed light" on government funds used for "SBA's image-making" and whether SBA "has issued misleading statements to the press." *Id.*  ASBL pointed out that it "regularly issues press releases regarding the SBA and ASBL's FOIA litigation and uses the information it obtains to educate the public." *Id.* at 3.

SBA replied to ASBL's initial letter and reconsideration letter, both times determining that ASBL failed to provide sufficient detail to show that Request No. 565 warranted a fee waiver. Olson Decl. Ex. B; Benderson Decl. Ex. K.  Later, in denying ASBL's appeal, SBA contended that ASBL had "failed to identify with reasonable specificity which of the government's operations or activities its request concerns." No. 565 Appeal Ltr. at 4.[9]  SBA pointed to ASBL's "conclusory statements" that failed to "sufficiently specif[y] the link between the information requested and the public interest." *Id.*

In accordance with governing legal authority, the court examines the entire record and liberally construes ASBL's fee waiver request.  First, the record establishes that SBA provided a public interest fee waiver for part of Request No. 565.  ASBL disingenuously omitted from its motion—but does not dispute—that SBA *reversed* its initial decision and agreed to waive fees for information that arguably was related to the PPP.  *See* Benderson Decl. Exs. B, K.  It is undisputed that the initial FOIA request made no reference to the PPP at all, and that ASBL only clarified that the request included search terms related to the PPP on the April 23, 2020 phone call between Olson and SBA's legal counsel.  *See* Olson Decl. ¶ 2, Ex. B; Benderson Decl. ¶ 5.  ASBL's

---

[9] ASBL contends that the court may not consider the SBA's "belated, post-lawsuit" November 2020 appeal determinations because they "are not a legitimate part of the administrative record." ASBL Opp'n at 7-8 n.5, 17.  To the contrary, the administrative record includes "the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal." *Monaghan v. F.B.I.*, 506 F. App'x 596, 597 (9th Cir. 2013) (quoting *Forest Guardians v. Dep't of the Interior*, 416 F.3d 1173, 1177 (10th Cir. 2005)).  "[T]he fact that an agency's response was untimely does not preclude inclusion of that response in the administrative record for consideration by the courts." *Id.* (citing cases).

1    reconsideration letter and administrative appeal briefly address the request's connection to the PPP

2    and why records about transparency on how SBA administered the program are "meaningfully

3    informative" to the public.  13 C.F.R. § 102.8(*l*)(2)(i), (ii)(A)(B).  SBA waived the fee relevant to

4    the disclosure of documents regarding the PPP and has now disclosed responsive documents.

5    Benderson Decl. Exs. B at 3-4.  At the hearing, SBA's counsel acknowledged that "to the extent

6    there was specificity on PPP . . . [SBA] would actually waive or reduce as a result of that, and

7    that's what happened." Tr. at 29.  That issue is now moot.  *See* Benderson Decl. ¶ 13; *Cause of*

8    *Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1113 & n.1 (D.C. Cir. 2015) (ruling that fee issue

9    for documents that agency produced without change was moot and "us[ing] the term 'moot' in the

10   colloquial sense to refer to an issue that is no longer of practical significance").

11         As for the remaining items in Request No. 565, the court concludes that ASBL failed to

12   establish with reasonable specificity that the disclosure would contribute to the public's

13   understanding of SBA's operations.  The fact that ASBL self-identifies as a "policy advocacy

14   group" is not conclusive.  *See* Olson Decl. Ex. D.  "[T]he Ninth Circuit has further noted—in

15   explicit terms—that a public interest group must still meet the statutory standard for a waiver and

16   is not entitled to any presumption that there should be a fee waiver."  *Friends of Oceano Dunes,*

17   *Inc. v. Salazar*, No. C-11-1476 EMC, 2011 WL 6748575, at *2 (N.D. Cal. Dec. 22, 2011) (citing

18   *McClellan*, 835 F.2d at 1284).  The remainder of ASBL's response is circular, conclusory, and a

19   mere restatement of the legal standard.  *See, e.g.*, Olson Decl. Ex. C at 3 ("For [SBA] to argue that

20   ASBL's request does not concern the 'operations or activities' would be tantamount to arguing

21   that you and everyone else in your office are being paid by the government to do nothing"; "Rest

22   assured that ASBL has the 'intentions, ability, and methods of disseminating information to the

23   public about SBA's activities").  ASBL's administrative appeal only explains in broad, general

24   terms about how the requests would "shed light" on the SBA's press office's activities, statements,

25   and sources of influence.  Olson Decl. Ex. D at 4.  These generic statements are not enough to

26   meet ASBL's initial burden to show that a fee waiver is justified.

27         Ninth Circuit authority provides helpful guidance on the sufficiency of a requestor's initial

28   showing for a public interest fee waiver.  In *McClellan*, the Ninth Circuit examined a FOIA

1   request by a non-profit association for twenty-five categories of records regarding water pollution

2   at McClellan Air Force Base ("AFB") near Sacramento. *McClellan*, 835 F.2d at 1283. The

3   requesters "stated that they seek to benefit the general public, especially in Sacramento; that

4   information may be used in litigation to ensure that agencies comply with federal law; and that the

5   information ultimately will be donated to a public institution." *Id.* at 1285. The Ninth Circuit

6   ruled that "[t]hese statements do not support a summary conclusion that the agency must waive all

7   fees." *Id.* The court recognized that the request "obviously has the operations or activities of

8   government as its subject" and that the information "could support public oversight of AFB's

9   operations, including the effect AFB's water pollution policy has on public health." *Id.* at 1286.

10  However, it held that disclosure would "likely result in only limited public understanding in

11  Sacramento" given that the request sought "a large volume of information . . . much of it identified

12  only by broad categories." *Id.* Furthermore, the requesters gave "no details" about how they

13  intended to convey the information gleaned from the request. *Id.*[10] Accordingly, "[w]ithout more

14  specific information, which was not on the record before the agency, [the Ninth Circuit] ha[d] no

15  reason to conclude that disclosure of the [requested] information will have much significance" or

16  make a "*significant* contribution to public understanding." *Id.* (emphasis in original). *See also*

17  *Monaghan*, 506 F. App'x at 598 ("It is unclear how documents that address 'broad public

18  skepticism' and 'public doubts' regarding the crashes of American Airlines flight 77 and United

19  Airlines flight 93 are 'meaningfully informative' on governmental operations or activities, and it is

20  not the FBI's responsibility to infer a connection.").

21          By contrast, in *Friends of the Fork*, the Ninth Circuit held that public interest

22  environmental organizations met their initial burden of showing that they were entitled to a fee

23  waiver because "[t]hey identified why they wanted the administrative record, what they intended

24  to do with it, to whom they planned on distributing it, and the zoological expertise of their

25  _____

26  [10] The Ninth Circuit also took issue with the lack of evidence in the administrative record that the
    plaintiff had a "history of disseminating such information, either through public lawsuits or other

27  means." *McClellan*, 835 F.2d at 1286. On that point, *McClellan* is distinguishable as ASBL
    provided evidence that it regularly engages in media activities to disseminate the findings from its

28  FOIA requests.

1    membership.  In particular, they made it clear to [defendant] that they meant to challenge publicly

2    the scientific basis for the western pond turtle listing denial." *Friends of the Coast Fork*, 110 F.3d

3    at 55.  Other courts have ruled that FOIA requestors satisfied their prima facie burden with a

4    similar level of specificity.  *See, e.g.*, *Ctr. for Biological Diversity*, 546 F. Supp. 2d at 727-28

5    (burden met where requester established its "aim to determine the weight placed upon climate

6    science and climate change by the OMB when the OMB conducted the cost-benefit analysis with

7    respect to fuel efficiency standards" and that it "intended to use the documents to evaluate and

8    publicize the government process for setting fuel economy standards"); *Ctr. for Medicare*

9    *Advocacy*, 577 F. Supp. 2d at 240-41 (request for documents related to proposal to establish

10   videoconferencing system for administrative hearings was "specific and the information sought

11   concerns activities and operations undertaken by the government," and "[t]he material can

12   therefore provide insight on the options and factors under consideration by the agency").

13          ASBL's arguments for a public interest fee waiver do not reach the requisite specificity

14   demonstrated in these cases.  ASBL fails to describe specific connections between the requested

15   information and SBA's operations and activities; its materials simply ask for all communications

16   between SBA's press office and third parties over a seven-month period.  ASBL does not

17   satisfactorily explain why this disclosure of documents would supply meaningful information

18   about SBA's media and team.  Its broad request is more akin to the general statements in

19   *McClellan* than the tailored request in *Friends of the Coast Fork* that clarified why the requestor

20   wanted certain materials and its intentions in disseminating it.  At the hearing, ASBL's counsel

21   could not direct the court to any other evidence in the administrative record that the sought-after

22   information was in the public interest.  *See* Tr. at 24-29.  Based on the record before it, the court

23   concludes that ASBL failed to satisfy its burden to show that disclosure of the information sought

24   in Request No. 565 for which SBA did not grant a fee waiver is in the public interest.

25                        **2.      Request No. 1532**

26          Next, the court evaluates whether ASBL made a sufficient showing that the information

27   sought in Request No. 1532 about SBA's Regional Regulatory Fairness Board would lead to

28   greater public understanding about the SBA.  The record does not contain any evidence that ASBL

United States District Court
Northern District of California

17

1    initially sought a fee waiver or reduction for this request.  *See* Olson Decl. Ex. F; Ex. T;

2    Benderson Decl. ¶ 15; *see* 13 C.F.R. § 102.8(*l*)(1) ("Requesters may seek a waiver of fees by

3    submitting *written correspondence*" (emphasis added)).  SBA estimated $2,852 in fees associated

4    with responding to Request No. 1532 without addressing any grounds for a fee waiver.  Olson

5    Decl. Ex. G; Benderson Decl. ¶ 16.

6         ASBL raised the waiver issue for the first time in its administrative appeal.  Olson Decl.

7    Ex. H at 3.  The arguments in ASBL's appeal largely resemble those it made with respect to

8    Request No. 565 discussed above.  Again, ASBL makes broad, conclusory statements that simply

9    recite the legal standard for a fee waiver.  *See* Olson Decl. Ex. H at 3.  In fact, here ASBL did not

10   offer any explanation for why it sought this information, its purpose, or how it would share the

11   information it acquired.  It simply averred that "[n]ews dissemination comprises a large part of

12   ASBL's advocacy" and that "it is asking for these records to investigate and inform the public

13   about government activities that implicate the policy area it focuses on." *Id.* at 3-4.[11]  For the same

14   reasons set forth above, the non-specific, conclusory arguments are insufficient to satisfy ASBL's

15   initial burden to show that Request No. 1532 sought information in the public interest.

16            ### 3.    Request No. 1953

17        Request No. 1953 seeks correspondence related to particular members of SBA's advisory

18   boards.  ASBL similarly fails to establish that this information would lead to greater public

19   understanding about the SBA.  ASBL's initial request in its June 19, 2020 letter stated its intention

20   was "to contribute to a greater understanding of the SBA's operations and the advisory boards'

21   roles and contributions as they relate to the [PPP].  Our client seeks disclosure of this information

22   solely to inform the public of the development and implementation process of the [PPP] through

23   its press releases and advocacy.  This information would significantly contribute to public

24   understanding of the [PPP] by informing the public of key decisions and considerations made

25   before and during the implementation of the program." Olson Decl. Ex. J.  ASBL's administrative

26

27   _____

28   [11] By contrast, SBA's appeal determination set forth at length why ASBL failed to satisfy this
     prong of the public interest waiver test.  *See* No. 1532 Appeal Ltr.

United States District Court
Northern District of California

1   appeal repeated this assertion and additionally referenced the PPP, albeit in generalized terms.  *See*

2   Olson Decl. Ex. L ("The purpose of the subject FOIA request is two-fold: to inform the public of

3   the SBA's activities, and to keep the SBA accountable in implementing government programs,

4   including but not limited to the PPP, a large, unregulated program.").

5          SBA rejected the waiver request because "the records you are seeking would have no

6   connection to SBA's implementation of the [PPP]. Your request sets forth no specific time frames

7   nor does it seek records related to the PPP.  Instead it broadly seeks all emails at any time

8   whatsoever related to the board member[s]. This would include far broader records than those

9   having to do with the PPP."  Olson Decl. Ex. K.  In the appeal determination, SBA characterized

10   ASBL's arguments as "conclusory" and failing to "explain with reasonable specificity on how and

11   why the disclosure of the . . . communications will serve the public interest nor do they explain the

12   link between the two advisory committees and how the PPP was implemented."  No. 1953 Appeal

13   Ltr. at 4.

14          The court concludes that ASBL's explanations related to Request No. 1953 do not suffice

15   to show that the information is in the public interest.  ASBL's request for communications with

16   members of specific groups over an undefined time period bears no express connection to the PPP.

17   Nor does ASBL characterize how it will use the disclosed information to shed light on SBA's

18   practices with respect to the PPP.

19          In sum, the undisputed evidence in the administrative record shows that ASBL did not

20   sufficiently justify why disclosure of the information sought by Request Nos. 565, 1532, and 1953

21   served the public interest by significantly contributing to public understanding of SBA's

22   operations or activities.  As such, the court need not address the second prong of the two-part test

23   provided in 5 U.S.C. § 552(a)(4)(A)(iii) as to whether the information was primarily in ASBL's

24   commercial interest.  The court concludes that ASBL is not entitled to a public fee waiver and

25   grants summary judgment to SBA on this issue.

26   **B.  Fee Reduction**

27          To warrant a fee reduction, a requestor must meet the requirements of at least one of the

28   subclauses under 552 U.S.C. § 4(a)(ii)(I)-(III) set forth above.  Although not a model of clarity,

United States District Court
Northern District of California

1    ASBL appears to argue that it warrants a fee reduction under subclause (II) and should only be

2    assessed duplication fees because it sought records for non-commercial use and ASBL is a

3    representative of the news media.[12]  ASBL Mot. at 14, 19; ASBL Opp'n at 3, 11.  According to

4    ASBL, SBA should therefore exclude search and review fees for all of ASBL's requests.[13]

5    **1.  Non-Commercial Use**

6    ASBL must first establish that it does not seek SBA's records for its own commercial

7    use.[14]  "Under Ninth Circuit law, information is deemed commercial if 'it relates to commerce,

8    trade, or profit.'"  *Oceano Dunes*, 2011 WL 6748575, at *2 (quoting *McClellan*, 835 F.2d at 1285).

9    SBA's regulations define a commercial use request as "a request that asks for information for a

10   use or a purpose that furthers a commercial, trade, or profit interest." which can include furthering

11   those interests through litigation." 13 C.F.R. § 102.8(c)(1).  The agency's decision on commercial

12   use is made "on a case-by-case basis based on the requester's intended use of the information."

13   *Id.*  SBA must "[i]dentify whether the requester has any commercial interest that would be

14   furthered by the requested disclosure." *Id.* § 102.8(*l*)(2)(iii)(A).  "Requesters must be given an

15   opportunity to provide explanatory information."  *Id.*  Should SBA identify a commercial interest,

16   it will determine whether a fee waiver or reduction is justified if other provisions are met and "any

17   commercial interest is not the primary interest furthered by the request."  *Id.* § 102.8(*l*)(2)(iii)(B).

18

19   [12] ASBL appears to structure its arguments as follows: it should not be charged review fees, which
20   are assessed only for records requested for commercial use under subclause (I).  Next, it argues
     that it should not be charged duplication fees, which are assessed for requesters who are not
21   representatives of the news media or educational or scientific institutions and not seeking the
     records for commercial use, under subclause (III).  Stated more concisely in the affirmative, ASBL
22   only seeks duplication fees under subclause (II) because it meets the standard set forth in that
     subclause.

23   [13] At the hearing, the parties agreed that the analysis for "non-commercial" standard for a fee
24   reduction is "similar" and "very close" to the "primarily in the commercial interest" standard for a
     fee waiver.  *See* Tr. at 29-32.  The court need not address any possible differences in the standards
25   as the court ruled that ASBL is not entitled to a fee waiver based on the public interest prong
     without reaching the "commercial interest" prong.

26   [14] ASBL argues that the Ninth Circuit has not addressed the issue of which party bears the burden
27   to establish that the requester is seeking records for commercial use.  ASBL Mot. at 18-19; ABSL
     Opp'n at 9-10.  At the hearing, ASBL's counsel conceded that the court need not reach this
28   question, and the court declines to do so.  Tr. at 37-38.

20

### a.      Request No. 565

ASBL states that it "intend[ed] to use this information [responsive to Request No. 565] to further the organization's noncommercial purposes of promoting and advocating policies in response to the events leading up to and including the enactment of the CARES Act, and in general advocating policies which aid small businesses, which many people refer to as 'the backbone of the American economy.'"  Olson Decl. Ex. C.  It further explained that "it is a policy advocacy organization, and it is asking for these records to investigate and inform the public about government activities that implicate the policy area it focuses on. Researching government activity regarding and advocating for what the government has declared should be small business protections benefits all Americans, as opposed to furthering its own 'commercial, trade, or profit interest.'"  Olson Decl. Ex. D.[15]  None of ASBL's explanations suggest that the disclosures would further its own commercial, trade, or profit interest.

SBA first argues that it did not address noncommercial interest in its denial letters because ASBL did not raise the issue in its initial requests.  SBA Mot. at 22-24.  Nevertheless, the court is required to review the whole administrative record before the agency.  *See Cause of Action*, 799 F.3d at 1114 ("Because that record encompasses all of Action's submissions . . . the district court must review those submissions to determine whether Action qualified for the fee waivers it sought.").  SBA next argues that ASBL's "non-profit status does not mean that it cannot be deemed a commercial use requester."  SBA Mot. at 23.  While it is true that "even a public interest group must still meet the statutory standard for a fee waiver," here ASBL sufficiently explained why it would not derive non-commercial benefit from the disclosure.  *See Oceano*, 2011 WL 6748575, at *2.  Finally, in its appeal decision, SBA represented that after reviewing ASBL's website, it concluded that ASBL's policy advocacy is done "for the commercial and profit interest of its members."  No. 565 Appeal Ltr. at 6-7.  SBA does not offer any explanation or evidence to

---

[15] ASBL pointed to *American Small Business League v. SBA*, 2009 WL 1011632, at *3-4, in which the court analyzed the commercial benefit of a FOIA request in the context of an attorneys' fees award.  That case is inapposite because it deals with the legal standard for awarding attorneys' fees in a FOIA case, not a request to reduce fees for records.  Additionally, non-commercial use must be considered case by case.  13 C.F.R. § 102.8(c)(1).

United States District Court
Northern District of California

1   substantiate this conclusion or that ASBL's advocacy work primarily furthers its own profit or

2   trade motives.  *See* 13 C.F.R. § 102.8(*l*)(2)(iii).  At the hearing, SBA's counsel pointed to the fact

3   that ASBL admits to using litigation as a tool to advance its members' interests and referred the

4   court to provisions cited in its briefing.  Tr. at 34-35; *see also* No. 1532 Appeal at 7.  While SBA's

5   regulations define a commercial use request as one that "can include furthering those interests

6   through litigation," 13 C.F.R. § 102.8(c), nevertheless, SBA fails to show how ASBL's litigation

7   furthers any profit or trade motive.

8       Construing the record as a whole, the court concludes that ASBL sufficiently established

9   that Request No. 565 was not made for its own commercial use.

10                  **b.      Request No. 1532**

11      ASBL provided a similar explanation of non-commercial purpose for Request No. 1532.

12  Olson Decl. Ex. H.  For its part, the SBA declined at the administrative appeal level to "examine if

13  the requested information would primarily serve [a] commercial interest of the Appellant since

14  [ASBL] has not shown that fee waiver would be in the public interest."  No. 1532 Appeal Ltr. at 7.

15  The court cannot consider SBA's new arguments that were not raised at the administrative level.

16  Even if it could, SBA's briefing largely reiterates its unsuccessful arguments discussed above with

17  respect to Request No. 565.  Accordingly, ASBL has established non-commercial use for this

18  request.

19                  **c.      Request No. 1953**

20      ABSL similarly explained the non-commercial purpose of Request No. 1953.  ASBL also

21  asserted that the "sole purpose of filing the subject FOIA request is to disseminate the information

22  in online press releases in an effort to assist and advocate for small businesses.  ASBL will not

23  receive a commercial benefit through the use of the requested information."  Olson Decl. Ex. L at

24  4. SBA asserts arguments similar to those it made regarding Request No. 565, based in part on its

25  review of ASBL's website.  *See* No. 1953 Appeal at 6.  For the same reasons set forth above,

26  ASBL sufficiently established show non-commercial use for this request.

27      In sum, the court concludes that ASBL adequately demonstrated that all three requests

28  were for non-commercial use.

United States District Court
Northern District of California

### 2.     News Media Representative

In order to qualify for a fee reduction under subclause (II), ASBL also must establish that it is a news media representative.  FOIA defines a representative of the news media as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."  5 U.S.C.§ 552(a)(4)(A)(ii)(III); *see also* 13 C.F.R. § 102.8(c)(6) (same).  FOIA defines "news" as follows:

> [I]nformation that is about current events or that would be of current interest to the public.  Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify as disseminators of "news") who make their products available for purchase by or subscription by or free distribution to the general public.

5 U.S.C.§ 552(a)(4)(A)(ii)(III); *see also* 13 C.F.R. § 102.8(c)(6).  The agency is permitted to consider the requester's "past publication record" in making its determination.  13 C.F.R. § 102.8(c)(6).  "A substantive press release or editorial comment can be a distinct work based on the underlying material," and "posting content to a public website can qualify as a means of distributing it" as news.  *Cause of Action*, 799 F.3d at 1122-23.  While the commercial use question is considered on a case-by-case basis, *see* 13 C.F.R. § 102.8(c)(1), "the news-media waiver, by contrast, focuses on the nature of the *requester*, not the request," *Cause of Action*, 799 F.3d at 1121.[16]

The undisputed record establishes that ASBL is a representative of the news media, as that term is defined for FOIA purposes.  ASBL gathers information of current interest to the general

---

[16] SBA's counsel warned that a finding that ASBL qualifies as news media organization would automatically qualify it as one in future requests, and that "their status as an advocacy organization in the past shouldn't . . . automatically qualify it for reduction simply based on that status."  Tr. at 42.  The agency's own regulation 13 C.F.R. § 102.8(c)(6) and *Cause of Action* foreclose that argument.  "A newspaper reporter, for example, is a representative of the news media regardless of how much interest there is in the story for which he or she is requesting information," unless the request is made by a news-media entity in its "corporate rather than journalistic capacity."  *Cause of Action*, 799 F.3d at 1121 & n.10.

United States District Court
Northern District of California

public, turns raw materials into a distinct work, and disseminates that work.[17]  In multiple letters to

SBA, ASBL established that it gathers information it gleans from agencies or other sources and

disseminates the material through multiple public-facing strategies.  *See, e.g.*, Olson Decl. Ex. D at

4, Ex. H. at 3.  While its individual requests lack the specificity to show a sufficient connection to

the PPP to warrant a public interest fee waiver, the record as a whole indicates that the purpose of

ASBL's requests at least in part was to gather information about this important government

program that was prominent in the media in 2020 and is of interest to the public.  *See, e.g.*, Olson

Decl. Ex. C at 3 ("ASBL's requests are focused on the PPP and how the SBA has administered

that controversial program.  The public has an overwhelming interest in knowing whether SBA

has administered the PPP effectively"); *id*. Ex. J at 3 (Request No. 1953 "would significantly

contribute to public understanding of the [PPP] by informing the public of key decisions and

considerations made before and during the implementation of the program").   ASBL recounted

that it "has always published press releases via its own website and through other publishers to

inform the general public of federal and state policies affecting small businesses."  Olson Decl.

Ex. D at 4; *see also* Olson Decl. Ex. H at 3 (same).  Indeed, ASBL's "sole purpose of filing the

FOIA request [No. 1953] is to disseminate the information in online press releases."  Olson Decl.

Ex. L. at 3-4.  ASBL's use of its own website to spread the information also suffices to

demonstrate that it means to make its materials available to the general public.  Furthermore, the

record includes assertions that Chapman and Olson regularly publish opinion pieces and appear in

the press to present ASBL's findings.  Olson Decl. Ex. D at 3, Ex. H at 3.  ASBL pointed to its

past publication record as including "articles published in the online version of the San Francisco

Chronicle twice in the past year which mention ASBL; the Sacramento Valley Mirror has

published both an op-ed piece and a press release mentioning and/or issued by ASBL; and

ASBL's president Lloyd Chapman has recently appeared on the radio and appeared on television

many times in the past."  Olson Decl. Ex. L at 3-4.

---

[17] The court declines to consider evidence from the Chapman Declaration or the articles attached to the supplemental Olson Declaration as they were not before the agency and therefore are not part of the administrative record.

United States District Court
Northern District of California

1    SBA's counterarguments are unavailing.  SBA argues that ASBL only offered "general

2    statements about its past activities," and its "contemporaneous statements" about "making

3    information available to the public," and did not express a "firm intention to publish the

4    information."  SBA Mot. at 21; *see* No. 1532 Appeal Ltr. at 7; No. 565 Appeal Ltr. at 5-6; No.

5    1953 Appeal Ltr. at 5-6.  SBA proffers *National Security Archive v. Department of Defense*, 880

6    F.2d 1381 (D.C. Cir. 1989), to argue that a requester must show a "specific or firm intention to use

7    or publish the specifically requested information."  SBA Mot. at 21-22; SBA Reply at 6; *see also*

8    Tr. at 39.  In that case, the D.C. Circuit ruled that the plaintiff was a representative of the news

9    media even though "it has previously published only one book . . . but it has expressed a firm

10   intention . . . to publish a number of what it refers to as "document sets."  *Nat'l Sec. Archive*, 880

11   F.2d at 1386-87.  "Each of the document sets it had planned at the time of the administrative

12   proceedings will be devoted to a particular topic of current interest."  *Id.* at 1386.  After reviewing

13   the legislative history of the provision, the court interpreted "representative of the news media"

14   broadly and explained that the plaintiff was "surely publishing or otherwise disseminating

15   information."  *Id.* (quotation omitted).  The court did not focus on the plaintiff's detailed

16   description of its plans, but rather on whether the plaintiff was engaged in a venture in which it

17   "gathers information of potential interest to a segment of the public, uses its editorial skills to turn

18   the raw materials into a distinct work, and distributes that work to an audience."  *Id.*  An

19   organization that "gathers information from a variety of sources; exercises a significant degree of

20   editorial discretion in deciding what documents to use and how to organize them; devises indices

21   and finding aids; and distributes the resulting work to the public" meets the "concept" of a

22   "representative of the news media."  *Id.*

23   The D.C. district court subsequently interpreted *National Security Archive* and observed

24   that the plaintiff detailed its "relatively established history of publication activities, as well as its

25   intent to use the information sought in these particular requests as the basis for several press

26   releases and articles similar in nature to its previous reports."  *Ctr. For Pub. Integrity v. Health &*

27   *Human Servs.*, No. CIV.A.06 1818 JDB, 2007 WL 2248071, at *6 (D.D.C. Aug. 3, 2007)

28   (quotations omitted).  The court observed "there is no indication, however, that the court of

United States District Court
Northern District of California

1    appeals intended [in *National Security Archive*] in all circumstances to require a detailed game

2    plan for the publication of information requested through FOIA, particularly for those

3    organizations whose past activities would unambiguously qualify them as members of the news

4    media."  *Id.*

5           *National Security Archive* and its characterization by *Center for Public Integrity* support a

6    similar result here.  ASBL explained to SBA that it regularly gathers information from FOIA

7    requests and publicizes the findings from its investigations in press releases and media

8    appearances.  ASBL intended to use the material derived from these requests in a similar fashion.

9    That is sufficient to show that ASBL meets the characteristics of a representative of the news

10   media for FOIA purposes.  ASBL was not required to provide a specific gameplan about how it

11   intended to publish the information disclosed from these particular requests.[18]

12          Finally, SBA's argument that ASBL is a public advocacy organization and not "organized

13   and operated to publish or broadcast news" is irrelevant.  *See* No. 565 Appeal at 6; No. 1532

14   Appeal at 7; No. 1953 Appeal at 6.  Multiple courts have held that non-profit organizations that

15   conduct investigations and publish press release and other articles about their findings amount to

16   news media representatives for the purposes of FOIA.  *See, e.g.*, *Cause of Action*, 799 F.3d at

17   1111 (plaintiff a "nonprofit organization that advocates for economic freedom and opportunity");

18   *Ctr. For Pub. Integrity*, 2007 WL 2248071, at *1 (plaintiff a "nonpartisan, nonprofit investigative

19   reporting organization that examines and writes about public service and ethics-related issues.").

20          The undisputed record therefore establishes that ASBL is a representative of the news

21   media as defined under FOIA.  In light of the court's earlier conclusion that ASBL requested

22   records for non-commercial use, the court finds that ASBL is entitled to a fee reduction limited to

23   duplication fees as provided under subclause (II).  Summary judgment is therefore granted to

24   ASBL on the question of a fee reduction for all three requests.

25   _____

26   [18] In its briefing and at the hearing, SBA urged the court to consider *Eagle*, 2003 WL 21402534, at
     *4, for the same proposition.  That case is distinguishable.  *See id.* at *3-5.  *Eagle* discusses
27   whether the requested information furthered the public interest for purposes of a fee waiver.  This
     is a different legal standard.  The question here is whether ASBL is a representative of the news
28   media for purposes of establishing its entitlement to a fee reduction.

**C. SBA's Untimeliness**

Finally, ASBL argued that it should not be charged search fees because the SBA failed to timely process its administrative appeals.  SBA counters that exceptional circumstances related to the COVID-19 pandemic justified its delay.  At the hearing, ASBL clarified that "with respect to the delay issue and the consequences of delay, we're not saying that delay means they can't charge us anything.  We're simply saying that their delay means they can't charge us search fees."  Tr. at 21-22.

The court does not reach this issue because of its ruling under subclause (II) that ASBL may only be charged duplication fees and not search or review fees, and because ASBL does not challenge assessment of duplication fees as untimely.

## IV.   CONCLUSION

For the foregoing reasons the court finds that each motion is granted in part and denied in part.  ASBL does not qualify for a public interest fee waiver for the FOIA requests at issue in this case.  However, ASBL qualifies for a fee reduction limited to the cost of duplication of documents responsive to each of these requests.  The parties shall promptly meet and confer to determine the cost of duplication.  The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: June **7**, 2022



Donna M. Ryu
Judge Donna M. Ryu
United States Magistrate Judge