KARL OLSON (SBN 104760)
AARON R. FIELD (SBN 310648)
IRENE LEE (SBN 331485)
CANNATA, O'TOOLE, FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Telephone:   (415) 409-8900
Facsimile:   (415) 409-8904
Email:       kolson@cofolaw.com
             afield@cofolaw.com
             ilee@cofolaw.cm

Attorneys for Plaintiff,
AMERICAN SMALL BUSINESS LEAGUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>          Plaintiff,<br><br>vs.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>          Defendant. | Case No. 4:21-cv-02877-DMR<br><br>**DECLARATION OF THOMAS R. BURKE IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS**<br><br>**Date: October 27, 2022**<br><br>**Time:  1:00 p.m.**<br><br>**Place:  Courtroom 4** |

Thomas R. Burke states:

1. I am a partner in the law firm of Davis Wright Tremaine LLP ("DWT") and primarily work in the firm's San Francisco office. I have personal knowledge of the facts stated in this declaration and could competently testify to them if called as a witness.

2. DWT is a national law firm of approximately 600 attorneys. The firm is annually recognized by *Chambers USA*, *Best Lawyers in America*, *U.S. News & World Report* and others nationally and in California for its First Amendment, media, and public records litigation practice. DWT is based in Seattle and has offices in Bellevue, WA; Anchorage, AK; Chicago, IL; Portland, OR; San Francisco, CA; Los Angeles, CA; New York, NY; and Washington, D.C.

3. I have advised on Freedom of Information Act matters and handled such lawsuits for clients throughout my legal career. Due to my extensive experience with complex federal FOIA and public records litigation, I was asked by the Plaintiff in this case to review their time records and opine on the reasonableness of the hours spent by Plaintiff's counsel in achieving the results they obtained, and to opine on rates.

4. As a media lawyer who is currently litigating over 30 different FOIA and state public records lawsuits in California, New York, Washington, D.C., Illinois, and Washington State, and as the former co-chair of DWT's media practice (2013-2017) and a current member of my firm's Executive Committee, I am very familiar with rates charged by other law firms whose attorneys specialize in public records access litigation. The hourly billing rates sought by Plaintiff in this litigation of $800 an hour for senior partner Karl Olson, $400 per hour for junior partner Aaron Field, $325 an hour for associate Irene Lee, and $175 for paralegals (principally Kristel Gelera) are well within the range of rates charged by other comparable firms, and in fact well below prevailing rates for attorneys of comparable experience at many Bay Area firms. These rates are particularly reasonable in light of the respective professionals' experience. I am very familiar with Karl Olson's practice and the high quality of his work justifies an $800 an hour rate. Indeed, Mr. Olson's hourly rate is likely modest – by at least $150 per hour – than the hourly rate he could command in the San Francisco legal market.

1

DECLARATION OF THOMAS R. BURKE IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS
CASE NO. 4:21-cv-02877-DMR

**Qualifications and Experience**

5. I have over 32 years of experience in media law and First Amendment litigation matters, including public records litigation. I graduated *magna cum laude* in 1989 from the University of San Francisco School of Law and have been in private practice in the San Francisco Bay Area ever since. I was admitted to the California Bar in December of 1989 and remain a current and active member of that bar. I am also admitted before all state and federal courts in the State of California, the Ninth Circuit Court of Appeals, and the U.S. Supreme Court. Throughout my career, I have personally handled public records/FOIA litigation in the states of California, Washington, Nebraska, Illinois, New York, and the District of Columbia.

6. After an externship as a law clerk to the Hon. U.S. District Judge Marilyn Hall Patel of the Northern District of California, I began my law practice as an associate with the law firm of Crosby, Heafey, Roach & May in Oakland, California where I was the primary "outside" newsroom counsel for several daily newspapers, including Bob Maynard's *Oakland Tribune*. I joined DWT in December of 1996 and became a partner of the firm in 1999. In 2002, I became a *Lecturer* (and later, a *Continuing Lecturer*) in Media Law at the Graduate School of Journalism at the University of California, Berkeley where I taught every fall for nearly two decades. Since 1990, I have served as a legal advisor to the First Amendment Coalition, a non-profit organization dedicated to ensuring, among other things, the public's right of access to public records and government meetings. I am also outside legal counsel to the Center for Investigative Reporting in Emeryville, California. Among other publications, I have co-edited *The Right to Know: A Guide to Public Access and Media Law* (2007), as well as earlier editions of the California Newspaper Publishers Association's *Reporter's Handbook on Media Law*, publications routinely used by journalists in California. In 2013, I authored *Anti-SLAPP Litigation* for West Publications/The Rutter Group's Civil Litigation Series (which is supplemented annually), and I am a Contributing Editor to Weil & Brown, *Cal. Practice Guide: Civil Procedure Before Trial* (The Rutter Group 2014-present) (Anti-SLAPP Motions chapter). For well over the past decade, my media and First Amendment practice has been recognized in annual listings in *Chambers USA* (nationally and for

California), *Best Lawyers in America*, *U.S. News & World Report*, and *Super Lawyers*, among others.

7. Since I began practicing law in 1989, I regularly counsel clients and represent journalists, citizens, media companies and other clients in public records act and FOIA litigation matters in the state and federal courts. In 1999, I co-authored Proposition G, a ballot initiative enacted by the voters of San Francisco to reform the City's landmark Sunshine Ordinance, which provides for greater rights of access to public records and government meetings within the City and County of San Francisco. My representative FOIA, California Public Records Act ("CPRA") and other public records litigation experience includes: *Williams v. Superior Court* (1993) 5 Cal. 4th 337 (CPRA lawsuit involving access to disciplinary records of law enforcement officers involved in the botched execution of a search warrant); *Bakersfield City School District v. Superior Court* (2004) 118 Cal. App. 4th 1041 (establishing CPRA right of access to complaints of misconduct by public employees and creating the current legal standard for public access to such records of public employee misconduct); *Gordon v. FBI*, 388 F. Supp. 2d 1028 (N.D. Cal. 2004); 390 F. Supp. 2d 897 (N.D. Cal. 2005) (FOIA lawsuit that compelled the FBI and TSA to publicly release previously secret documents about the federal government's expanded use of the "no fly" and "selectee" lists to screen airline passengers after September 11th); *Berman v. CIA*, 501 F.3d 1136 (9th Cir. 2007) (representation of Vietnam war historian in FOIA litigation involving access to historic President Daily Intelligence briefings during the Vietnam War that were released after the litigation); *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Alameda County* (2007) 42 Cal. 4th 319 (amici brief on behalf of the Coalition of University Employees in support of the public's right of access to the salaries paid to California's public employees; Karl Olson was the lead counsel for the newspaper in that case); *Lawyer's Committee of the San Francisco Bay Area v. U.S. Treasury*, 534 F. Supp.2d 1126 (N.D. Cal. 2008) (FOIA lawsuit that disclosed documents showing that individuals were falsely listed on the federal government's public terrorist watch list); *In re Adams County Historical Society v. Kinyoun* (2009) 277 Neb. 749 (following a trial, secured a unanimous opinion by the Nebraska Supreme Court establishing that the names of 1,600 former residents buried

3

anonymously between 1890 and 1959 at the Hastings Regional Center, the state's largest mental health cemetery, are public under Nebraska's Public Records Act); *The Press Democrat v. Sonoma County Employees' Retirement Association* (2011) 198 Cal. App. 4th 986 (CPRA lawsuit to secure public access to the names and pensions paid to Sonoma County government retirees); *Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal. App. 4th (amici brief in support of the public's right of access to the names and pensions paid to Sacramento County government retirees; Karl Olson represented the newspaper in that case); *Marken v. Santa Monica-Malibu Unified School District* (2012) 202 Cal. App. 4th 1250 (applying the earlier *Bakersfield* opinion and upholding the public's right of access to records of a high school teacher disciplined for misconduct); *Martins v. U.S. Citizenship & Immigration Services*, 962 F. Supp.2d 1106 (N.D. Cal. 2013) (FOIA action that, through a nationwide settlement, compelled the USCIS to make asylum officers' interview notes available to all asylum applicants to the U.S.); *The Los Angeles Times v. The Regents of the University of California* (Alameda Sup. Ct., First Appellate District and California Supreme Court 2014) (CPRA lawsuit to compel disclosure of the names of police officers involved in the infamous pepper spraying of students protesting tuition increases at UC Davis); *Public Resource.Org v. IRS*, 50 F. Supp.3d 1212 (N.D. Cal. 2015); 78 F.Supp.3d 1262 (N.D. Cal. 2015) (FOIA action that compelled the IRS to make all Form 990s (filed by all non-profit organizations) publicly available nationwide in modern electronic format beginning in 2016); *Bloom v. The Regents of the University of California* (Alameda Sup. Ct. 2015) (CPRA lawsuit to compel disclosure of a collection of thousands of historic records of task forces investigating organized crime in the 1940's in California under the direction of the Governor that were "donated" to the Bancroft Library on the UC Berkeley campus); *Board of Pilot Shipping Association Assn. v. Bd. of Pilot Commissioners* (2015) 242 Cal. App. 4th 1043 (CPRA lawsuit establishing that "port agent" is a public official whose records are subject to the CPRA); *First Amendment Coalition v. U.S. Dept. of Justice*, 869 F.3d 868 (9th Cir. 2017) (FOIA suit that compelled the U.S. Justice of the Office of Legal Counsel to release legal advice given to the CIA and DOD concerning the extra-judicial execution (by drone) of U.S. citizen while abroad who are identified as terrorists by the Executive Branch); *The*

*University of Washington v. Central Intelligence Agency* (U.S. Dist. Ct., E.D. Wash.) (2018) (special assistant attorney general in successful FOIA action that compelled the CIA to produce hundreds of previously classified records concerning the CIA's activities during El Salvador's civil war in the early 1980's then used to prosecute individuals in El Salvador); *National Conference of Black Mayors v. Chico Community Publishing, Inc.* (2018) 25 Cal. App. 5th 570 (CPRA action that compelled the release of hundreds of emails the Mayor of Sacramento sued to withhold under the attorney-client privilege) and *Becerra v. Superior Court*, 44 Cal. App. 5th 897 (2020) (CPRA action that compelled the Attorney General to release thousands of records involving police misconduct following the enactment of SB 1420).  My complete biography is available at https://www.dwt.com/people/ThomasRBurke/.

      8.  In all of the public records act cases I have litigated, when attorneys' fees were paid by the public agency defendants, the fees requests are calculated using my standard hourly billing rate – and the rates of my DWT colleagues – for the particular years involved in the litigation. My current hourly rate for FOIA and public records litigation is $895 per hour.  Recent examples where DWT's standard hourly attorneys' fees rates were awarded by state and federal courts in contested public records litigation fully support the fees award sought in this contested FOIA litigation.  For example, in the *Becerra* litigation, which remains ongoing, in 2021, the parties agreed to an interim fees settlement (for the first part of the case) in which the Attorney General's office paid in excess of $100,000 in fees using DWT's standard rates).  In 2022, in similar public records actions involving police misconduct records brought by KQED Inc. against both BART and the California Highway Patrol, substantial fees settlements were reached against both public agencies again using DWT's standard hourly rates, with no discounts.  In late 2018, in connection with a multi-year public records lawsuit that Muslim Advocates brought against the Los Angeles Police Department that forced the release of long-withheld records about the LAPD's creation of a "Muslim Watch" program for Los Angeles, the Los Angeles Superior Court awarded Muslim Advocates $516,000 in attorneys' fees and costs based on DWT's standard hourly billing rates, including $710 for my hourly rate in 2017 and a rate of $725 in 2018.  In 2015, in a copyright/public records lawsuit, *City of Inglewood v. Teixeira*, the federal court awarded DWT's

5

DECLARATION OF THOMAS R. BURKE IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS
CASE NO. 4:21-cv-02877-DMR

client $117,741.00 in attorneys' fees and costs, and approved my hourly rate of $645 per hours (for work performed in 2015).  In the *Bloom v. The Regents of the University of California* CPRA litigation, The Regents also paid approximately $100,000 – the full fees request sought – that was based on my firm's regular hourly billing rates for the years of that litigation.  In *Public.Resource.Org v. IRS*, after prevailing in a Freedom of Information Act lawsuit, Judge William Orrick, III of the U.S. District Court for the Northern District of California, awarded attorneys' fees of $238,125.62 in which DWT's hourly rates for 2015 were accepted including my approved $645 per hour rate.  In *Pacific Merchant Shipping Association v. Board of Pilot Commissioners*, 242 Cal. App. 4th 1043 (2015), a multi-year public records act trial and appellate matter, after the First District Court of Appeal upheld PMSA's fees award, the attorneys for the State of California stipulated to pay my hourly rate of $645 (2015) and $685 (2016) for my work in connection with that litigation, without the necessity of filing a second fees motion.  Finally, in *Los Angeles Times Communications LLC and The McClatchy Company DBA The Sacramento Bee v. University of California Board of Regents*, in 2015, my clients were awarded $233,225 in attorneys' fees by the Alameda County Superior Court, including nearly $80,000 for "fees on fees") after prevailing in multi-year public records litigation involving the infamous 2011 UC Davis pepper spray incident.  My court-approved hourly rate for work performed in 2015 in that that matter was also $645 per hour.

**The Time-Consuming Nature of Complex Federal FOIA Litigation**

9.  Successful federal FOIA litigation is time intensive.  In my experience, the longer a public records lawsuit continues, naturally, the greater the hours and fees that are incurred – but also, the more likely it is the agency that has steadfastly withheld records will insist the hours and fees incurred by the plaintiff were unnecessary or excessive.  When Department of Justice attorneys choose to defend an action aggressively, extensive negotiation, research and writing is required in response.  Unless plaintiff's counsel is persistent and continuously pushing for timely access to responsive documents and later, to challenge exemptions asserted, the public will never realize what its government is up to.

10. I know from first-hand experience the successful prosecution of a FOIA matter that extends over multiple years is a very difficult undertaking for the plaintiffs. It requires constant attention to ways in which to obtain the requested information as soon as possible. There is tension from trying to move the case along while fighting the government's insistence on taking more time and thwarting the timely release of information. If the litigation continues over the course of more than a year, as this litigation did, it necessarily involves considerable administrative effort to schedule and conduct discussions and negotiations with the government, to prepare for and attend court proceedings, and to review documents that are produced and to understand the information produced. Often law personnel may change over the course of protracted access litigation. In this case, a review of and briefing of complex federal regulations and statutes on search, review and duplication fees would necessarily contribute to a considerable amount of time in the briefing process. Persistence is required in protracted FOIA litigation and this means considerable time (and associated fees) are necessarily incurred in contested FOIA litigation. While the requestor or its counsel could conceivably drive up litigation costs unnecessarily, there is little incentive to do so for at least two reasons. First, the main goal of FOIA litigation is the prompt disclosure of records. Unnecessary and drawn out litigation inherently conflicts with that goal and thus is only likely to be undertaken where absolutely necessary to prevail in the litigation. Second, in cases like this one, the prospect of recovering attorneys' fees is never absolutely certain – thus any monetary incentive is tentative, at best.

11. In a contested FOIA litigation like this one, there is often considerable time that goes into the administrative process, even though it is clear from the start that the case will require litigation to get documents. The work continues after the case is filed. In my experience, when an agency makes the determination to fight the disclosure of responsive records, FOIA litigation can take multiple years to complete. I have recently resolved two different public records lawsuits that both spanned nearly five years. When these cases concluded after years of back and forth discussions with the government agencies, hearings, motions and, sometimes, appeals to obtain the disclosure of responsive documents, invariably when it comes time to pay

statutory attorneys' fees, the agency's position was to insist that plaintiffs simply did not need to devote such efforts (and associated fees) to obtain disclosure of the documents.

12. Moreover, in my experience, agencies like the SBA routinely ignore their obligations under FOIA and routinely refuse to timely respond to FOIA requests unless they are sued. Agencies often staff up other operations while failing to adequately staff the critical work of government transparency, which is what FOIA is all about. The filing of FOIA litigation and aggressively pursuing the disclosure of responsive records is the only way to ensure that the public is timely informed of the agency's conduct. Government recalcitrance comes at a cost to the public, as records are frequently produced years after opportunities to inform the public's discussion of the agency's conduct has dissipated, again, contrary to the letter and the spirit of FOIA. Consequently, substantial fees awards are perhaps the only way to bring attention to the agency's conduct and to help ensure that future records requests to the agency are given greater attention and appropriate resources.

**Reasonableness of Hours Spent By Plaintiff's Counsel**

I have reviewed the primary pleadings and orders in this case, including the two cross-motions for summary judgment and the order on them. I have also reviewed the docket and the time sheets of Plaintiff's counsel.

13. Based on my review of these documents, and my experience with FOIA litigation, I believe that the hours expended by Plaintiff's counsel were reasonable and necessary to obtain the results that they obtained. That is especially true because this case was a complex action that raised complicated issues about "search and review fees" that have rarely been litigated, and because Defendants vigorously defended the case. It is plain from the records I reviewed that counsel exercised appropriate billing discretion in doing the work they performed and contemporaneously recorded time on which Plaintiff's fees request is based.

14. It is also clear to me from looking at the docket and the briefs filed in this case that Defendants here put forth a vigorous defense, requiring Plaintiff's counsel to respond with an in-depth, heavily-researched response, supported by declarations.

15. I have reviewed the hours spent by Plaintiff's counsel on various aspects of this litigation, including drafting pleadings and negotiating with opposing counsel. I believe those hours to be reasonable and appropriate given the degree to which the government resisted the case.

16. It appears to me that Plaintiff's counsel exercised considerable judgment, resolving many disputes without court intervention and targeting the litigation on the core issue of the search and review fees (over $10,000) which defendant SBA attempted to charge. In my experience, FOIA litigation can easily metamorphose into an unwieldy mess, with a great deal of energy expended on minor matters or small fights over redactions and document withholdings or, as in this case, the government's attempt to charge excessive fees to process FOIA requests. While the work involved here was considerable, it appears to have been targeted, with Plaintiff's counsel investing time in matters of significance and responding to Defendants' arguments only where required. That approach was both efficient and successful.

17. I have also reviewed the hours Plaintiff's counsel has spent to date on preparing their fee petition and securing the necessary evidentiary support for the sums requested. Although that work is not yet complete, the work invested thus far is clearly warranted given the sums at stake. As noted above, in one cases my client was awarded $80,000 for "fees on fees," and I would certainly expect fees on fees in this case to be in the range of $60,000 to $80,000 assuming that defendant opposes the motion and it goes to hearing.

**Appropriateness of Case Staffing and Exercise of Billing Judgment**

18. In my opinion, Plaintiff's counsel appropriately staffed this case, dividing work between senior counsel Karl Olson, junior partner Aaron Field and associate Irene Lee, to put together a litigation team that had the relevant experience and capacity to handle this case. In contested FOIA litigation, such staffing decisions are frequently difficult to achieve over a protracted period of time given the nature of the agency's position, but it is apparent that appropriate case management procedures were followed by plaintiff's counsel in this case.

19. The use of multiple attorneys in FOIA litigation is commonplace, so as to reduce the costs of the litigation. Here, Plaintiffs appropriately used junior attorneys to do legal research,

9

DECLARATION OF THOMAS R. BURKE IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS
CASE NO. 4:21-cv-02877-DMR

review documents, and draft some pleadings, thereby helping cut down on the costs incurred by the more senior attorney. At the hearing on the motion for summary judgment, only junior partner Aaron Field attended it, demonstrating efficiency and a focus on economy. I did not see any signs of inappropriate staffing in this litigation.

20. The time spent in this case was reasonable, given that plaintiff prosecuted this case over more than a year (nearly two years including preparation), did extensive briefing on cross-motions for summary judgment, and then had to litigate the issue of attorney's fees.

21. Through July 7, 2022, the merits portion of the case, I am informed that plaintiff's counsel had incurred $102,258.44 in fees, including 29.55 hours of Karl Olson's time at $800 an hour, 133.1 hours of Aaron Field's time at $400 per hour, and 50.1 hours of Irene Lee's time at $325 per hour plus 27.4 hours of paralegal and legal assistant time at $175 per hour, as well as $4,299.94 in costs.  I believe that is a reasonable amount, and indeed considerably less than is usually spent in litigating FOIA cases.

22. I am informed that the government has argued that a considerable amount of plaintiff's fee request should be reduced for partial success.  It is common in FOIA litigation for a plaintiff not to prevail on every issue raised or to win on disclosure of every document at stake. It is uncommon, however, for fees to be "apportioned" for partial success in FOIA cases, and in my opinion apportioning fees in a case like this would discourage potential plaintiffs from vindicating their right of access to information in FOIA cases.  The availability of attorney's fees in FOIA cases is a critical feature of the FOIA statutes, and that availability would be diluted by apportionment for partial success, thus discouraging plaintiffs from filing FOIA litigation and discouraging efforts to hold the government accountable.  I have reviewed the Order on Cross-Motions for Summary Judgment in this case, and in my opinion there is no basis for apportioning fees (and certainly no basis for significant apportionment), since there was a common core of facts and related legal issues all pertaining to whether SBA should be able to charge for "search and review" fees.

23. Finally, plaintiff seeks $55,000 for "fees on fees." This figure is likely to be far

1  less than plaintiff is likely to spend on the fee issue given the need to file an opening brief and
2  declarations, a Reply Brief, and to prepare for and attend the hearing on the motion.   This
3  amount is eminently reasonable and is far less than parties often incur litigating fees.

4     24.   In short, the total amount requested by plaintiff on this motion – including fees on
5  the merits, costs and "fees on fees" – is $144,752.68. Given the battle plaintiff had to fight in this
6  case against the SBA to prevail, this amount is reasonable and should be awarded in my opinion.

7     25.   The tenacity of the defense is certainly a factor relevant in determining the
8  reasonableness of a plaintiff's fees.  This case  necessitated a great deal of  preparation work
9  along with extensive motion practice (cross-motions for summary judgment and now a contested
10 fee motion).  All of these factors show that plaintiff's request is reasonable.

11     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the
12 United States in San Francisco, California on August 24, 2022 that the foregoing is true and
13 correct.

_____
Thomas R. Burke